Chancellor Harper
delivered the opinion of the court.
I propose only to consider the question, arising under the wills in these cases, upon the limitation to the legatee and his issue. Until the case of Lyon vs. Mitchell, 1 Madd. Rep. 467, was brought to my view, I had thought it so perfectly settled as to have become familiar, that if there be a devise of personalty to one and his issue, with a limitation over in the event of his not leaving issue, thé limitation over is good, and the issue take as purchasers. The cases of Read vs. Snell, and Sampley vs. Blower, so often referred to, seemed to me expressly in point, and I was not aware that any doubt had been suggested either as to their construction or authority. And I am still satisfied, upon the fullest examination I have been able to make, that except the case of Lyon vs. Mitchell, there is not a single decision, dictum or principle, in the slightest degree at variance with them, or which would tend to give them a different interpretation.
There is no question at all, respecting the principle so strenuously contended for in argument — that the words which will give an estate tail in real property, will the absolute estate in personalty — if it be rightly understood. Whether the devise be to A. and his issue, or to A. for life and at his death to his issue, or whatever be the terms of the direct devise which will give an estate tail in real property, these words standing alone, will give an absolute estate in personalty. But if it be meant, that if upon the construction of the whole instrument taken together, the effect of it would be to give an estate tail in real property, the devisee will take an absolute *248 estate in personal property, it is unsupported by the slightest sha'-, dow of authority, and I think I may venture to say, there is not a passage in the books, alluding to the doctrine, in which the idea is not contradicted.
The doctrine is laid down by Mr. Fearne, (Con. Rem. and Ex. Dev. 491, 8.) After noticing the effect of the rule in Shelly’s case, he says, “ But in the limitation of personal estates, a similar rule does not always hold. If a form be devised to one for life, and afterwards to the heir3 of his body, those words are generally words of limitation, and the whole vests in the first taker.” After quoting cases to support this, he adds — “ However, if there appears any other circumstance or clause in the will, to shew the intention was, that these woids should be words of purchase and not of limitation, then it seems the ancestor will take for life only, and his heir will take by purchase.” So the rule is laid down by Fon. blanque, (8 Vol. p. 78, a. (t.) ) Or take it as given by Lord Roslyn, in Chanceless vs. Price, 3 Ves. 101. “I have understood the rule that has for along time" prevailed, to be to try it by this : would the words give an estate tail in real estate 7 If so, they give the absolute property in personalty, unless you can find in the will, something to skew he meant to tie it up.” The rule is not laid down in the unqualified manner which seems to be contended fox, even by Sir Thomas Plummer, the vice chancellor, in Lyon vs. Mitchell. After stating the rule as to giving the absolute property, he adds, “ unless the testator shews a clear intention that they shall not be so applied.” But it would be endless to refer to all the authorities ; the rule is never in any instance, laid down without the qualification. Suppose a gift to one expressly for life, and at his death to his issue, but if he should die without leaving issue, over. This no doubt would give an estate tail ia such property; for the word leaving, imports an indefinite failure of issue when applied to’ real property — (perhaps after the gift of an estate tail in real 'property.) But would any one contend that these words Would give the absolute estate in personalty 7 If so, it would be to defeat the intention — an intention which the law' does not forbid to have effect, when it is expressed as plainly as words can express it.
The question then is, whether the circumstances of limiting the property over on the event of not leaving issue, is sufficient to shew the testator’s intention to use the word issue, not as a word of limitation, but of purchase. When the words “ issue,” or “ heirs of the body,” are used in a devise, it must have one of two meanings, and. pnly one of two. It mean? either the indefinite *249 lineal succession of lieirs of the body, or the particular individuals who at a g.veti time answer the description of issue, i. e. children or other de3ce¡tdaE.ts. There is nothing doubtful or questionable in this. The ioiípur is the natural and obvious tcchuii al import, when asid iu « «ill, and so they will be understood, unless there is s..rnctl>i.>«’’ to «¿ive them a different meaning. When, therefore. Ibero is r. deviso to one and his issue, the law gives him the afaso* lute estate. Not because the testator intended to give an absolute estate. You cannot reject the word as unmeaning, which has an obvious, i-ettlod technical meaning, lie intended to give an estate restricted indefinitely to the lineal succession, as iu the case of an estate ait in real property. And the devisee takes the absoluto property, not because the tesó torso inteimed, but bccau.se the law Will not permit that which he did .intend.
Bin til nigh the fanner be the more obvious sense of the words, they will min it of the latter. There is a whole class of casts, in which tlmy have Leen so understood, as in . Hodgeson vs. Bussey, 2 Atk. 89, and Dye vs. Collis, 4 T. R.; and it in said they will be-construed as words of limitation, or of purchase, as may best effect the intention. Does the circumstance of limiting the property over on the event of nor leaving is me, express that intention ? It is admitted on ail bands, that iho !in Italian over is good. And why is this 1 Because the word leaving has reference to the death of,the first take*, and shews that the ¡estator did not use the word issue to signify the indefiui.e succession, but the individuals then living to answer the description. Yet the argument is, that we must take him to have used the word iu the former sense,'
This was the only question in the case of Lyon vs. Mitchell; thoug 1 the vice chancellor seems to me to touch it very slightly, ami to have expended the strength of his argument upon matters, which did not and could not arise in tho cause He refers» as au. thorny, to the various cases collet ted by Fearue, 463. To Searle vs. Scarle, in which there was no doubt of the intention to give an estate tail with a remainder after that estate. To Dodd vs. Dickenson, Butterfield vs. Butterfield, Daw vs. Pitt, Chandless vs. Price, and Bruncker vs. Bagot; in all of which, after the limhation to issue, the limitation over was for want of issue, or on. failure of issue ; terms in themselves importing an indefinite fail, lire if issue, and in which the limitation over was held to be void. Wont was wanted, and what was not, and I am pursuaded cannot be found, was a case ia which after an express limitation to issued *250 the limitation over was held to be good, in which the issue were n©3 held to take as purchasers.
The position, which is chiefly labored by the vice chancellor, is one, which 1 suppose hardly any one would now think of disputing, It is, that there is no inconsistency in giving the first taker the entire or absolute estate, and limiting it over on the event of his dying without issue then living, in abridgement of the preceding estate. His argument is, that it is competent for a testator to say, ** if nr, sons have children, I mean that they shall have an absolute interest in all my personal property, but if it ultimately turns out that they have no children at the time of their death, or if any oí them should not, 1 give it over in the- way 1 propose.” This he instats upon again and again ; speaks of the fallacy of confound, ing distinct propositions ; says that au executory devise operates to defeat the preceding estate, and supposes the case of a gift “ to my son absolutely, forever.” In all this there is no difficulty.
But there seems to me to exist confusion and ambiguity in thw vice chancellor’s argument, arising from this — that he himself, has not distinguished between the cases where the testator intends to give an absolute estate, and where the law gives that effect to his words in spite of his intention. If I give to my son, his executors, administrators, and assigns, with a limitation over in the event of his not leaving issue, there is no inconsistency in his taking an absolute estate, and the limitation over having effect. So if I give to my son indefinitely, which as respecting property imports an absolute estate. But when a testator gives to one and his issue, it is certain, as I have said, that he does not intend to give an absolute estate. He intends a benefit to issue in some way. He either intends that they shall take in indefinite lineal succession, or thal the persons answering that description at a particular time shall take. In every case of a gift to one and his issue, the question is, in which of these senses, he intended to use the woids, and this question was not considered by the vice chancellor, in Lyon vs, Mitchell.
It is admitted that if a testator gives to one and his issue, and stops there, he must he understood in the former sense, and the word will be one of limitation. So if he gives to one for life, and at his death to his issue, though in this case it should seem that he intended to give to issue as purchasers, yet the law contracts his intention. But besides the idea of conformity to the rule in Shelly’s case, there is a reason of necessity for this. The testator apparently intends to part with the whole estate ; yet if the devisee wuv not held to take the absolute property, the reminder would *251 be undisposed of in the event of his not leaving issue. This reason) however, dees not exist when there is a valid limitation over on that event.
I have said, that the eases of Read and Snell, and Lampley and Blower, seemed to me to be expressly in point. And upon the best examination I have been able to give them, Í find myself unable to regard them otherwise, or to perceive that they are in the slightest degree ambiguous. In both cases there was a devise to A and her issue, with a limitation over in the event of her wot leaving is-me. And this seems to me to be the whole of either case. With respect to the latter of these, the vice chancellor, in Lyon vs. Mitchell, says, “ The case of Lampley vs. Blower, is not an authority in favor of the plaintiff. In that case, however, Lord Hardwicke says, “ if it stood barely upon the words, to A. and her issue, or to A. and the heirs of her body, the first taker would have taken the whole; but it is not meant in that sense.” Now if this is law, it decides the present case; because those are the very words in the present. Here the personalty is given to the “ four eons and the issue of their bodies.” And again, “ Lampley and Blower, itself, is not an authority in favor of the plaintiff, because the terms of the will are very different: there being in that case a manifest intent to use the word issue as a word of purchase; and it could not be interpreted in any other sense consistently with the object of the will; but Lord Hardwicke prevents a general infe. ■rence being drawn, that in every case that will be the construction, by putting a case like the present, and stating a case like the pve* gent. This case of Lampley vs. Blower is an authority, therefore, directly in favor of the defendants and not against them.” Now with proper deference, the quotation made by the vice chancellor, or the application of 'it, seems to me a mutilated one. In the case before Lord Hardwicke, there certainly existed the additional circumstance of a valid limitation over, and it seems to me that Lord Hardwicke decided upon it. The same circumstance existed in the case before the vice chancellor, and he rejected it as immaterial. Immediately after the quotation made by the vice chancellor, Lord Hardwicke adds, “ And if either of them, happens to die and leaves no issue, the share of her so dy ing shall go to the survivor “ What is the meaning of this contingency V’ To say that the case was a direct authority in favor of the defendants, scarcely requires comment.
Lerd Hardwicke says,
“ The word issue is capable of three senses.”
*252 “ In one sense, as a word of description, to take in joint tenancy.”
“In another, as a word of limitation.”
“ And in a third, as a description of the person in remainder.’
He supposes it to be used in the last sense in the case before him.
“ The words leave no issue, are relative to any child the legatee might have'at the time of her death;”’’
“ The word leave explains the word issue in the first part of the devise, to mean such ás was left at the time of the death.”
“ There is nothing more common, than that the subsequent words descriptive of the contingency, explain the former as a devise to a man and his heirs, and afterwards testator says, if he shall die without heirs of his body, contracts it to an estate tail; so hers the subsequent words, if she shall happen to die, &o. and leave no issue, confine it to leaving issue at her death, and not generally.”
If this stood alone, it would be impossible for words to express more explicitly the principles of the decision.
The only additional circumstance in the case, was, that the legatees lived in Barbadoes, I cannot suppose Lord Hardwicko, to have decided on this circumstance; however he may have used it as matter of argument, to strengthen his conclusion from the terms of the will.
Lord Hardwicko says, “ The will was made in England, and the legatees lived in Barbadoes ; and the testatrix would not know at that distance, but that both might have issue.”
« The legacies vested immediately, and therefore it was intended to secure them to the issue if the- parents died in the testatrix’s life time.”
“ Suppose Mrs. Lampley had died without leaving issue, would not this have been a good devise over to the survivor of the nieces ? therefore, I am of opinion, that this vt as a contingent limitation to the other niece, Ann Blower, if Mrs. Lampley died without issue, and the whole did not vest in the first taker; and according to the restriction in Forth vs. Chapman, 1 Wms. 663, ought to be construed, leaving no issue at the time of the death.’'
Lord Hardwicke uses the whole argument derived from ¡he circumstance that the legatees lived iri Barbadoes, only to lend him to this conclusion — that the words must be taken to mean — leaving no issue at the time of the death. But this is now admitted to be th© uniform construction of the words leaving no issue, and it does not require the argument to give the construction. I understand the *253 argument thus — If you give to the legatee an absolute estate, then by her death in the lde time of testatrix, the legacy will lapse if it be several, or go to the survivor if it he a joint one, though she may liave issue, and notwithstanding the intention expressed in favor of issue. But make it a life estate, with remainder to the issue as purchasers, and then the death of the tenant for life will not defeat the remainder to the issue, or the contingent remainder substituted in place of it, in the event of the want of issue. This argument would apply m every case, whether.the legatee lived in England or Barbadoes. in every case, the intention might be, in like manner, defeated by the death oí the first taker in the life time of the testator •„ "though to be sure it applied more strongly in the latter case.
If, as was intimated, it be contended that it was a mere substitution, confined only to the event of the legatees dying in the life time of the testatrix, and that if the legatee had survived, she would have taken an absolute estate, and not an estate for life with remainder to the issue as purchasers, it is a method of construction totally unwarranted by the context. It would amount to this — if she never takes any thing under the will, she shall be restricted to a life estate ; if she ever does take any thing, it shall be an absolute estate.
As to the case of Read vs. Snell, (here is less pretence of ambiguity. It was suggested that the case was one of an executory trust. It might bo enough to say, that iri considering the question, whether the issue took as purchasers, Lord Hardwicke did not determine on tiiat ground. But in considering- the goodness of the limitation over, he says, “ It has been objected, the words for life are not in this will. But though weight has been laid upon those words for life, when they h»vo been it), yet I di not k ow that any weight has been laid on the wait of them, when the intention has otherwise appeared ; but if weight has been laid upon the want of them, when there has been a trust executed, yet there can be none when it is a trust executory-” He plainly intimates that though the circumsta ice of its being an executory trust, puts the matter out of doubt, it was not necessary to the decision. But sup. póses.it a trust executory. That authorized the chancellor to give effect to the intention. If thore be no rule, ns there cerrainly is not, to forbid our giving effect to the intention in the case of a legal estate or trust executed, why should the case be of less authority on that account? Then it would be a summary, hut somewhat bold method of disposing of a certainly net nnconsidered de» *254 cisión of one wlio lias bean commonly regarded as the greatest of English chancellors, to say it is not law. With respect to this case, the vice chancellor in Lyon vs. Mitchell, simply says, “ the au. ihority of that case is overruled by the decision in Garth vs. Baldwin.” I confess that I ota at a loss to perceive, how the case is overruled by the decision in Garth vs. Baldwin, (2 Ves. 646.) In that decision no mention is made of the case of Read vs. Snell, nor is there any reference to it. In that case, the limitation was to pay rents and profits to Edward Turner Garth, for life, and af-terwards to pay tile same to the heirs of his body, and for want of snch issue, to pay, &e. Lord Hardwicke held, that the first taker, took an absolute estate, and that the limitation over was too -remote and void — the words, “ for want of such issue,” importing an indefinite failure of issue. Real estate was given by the same words in which the devisee was held to take an estate tail. But Lord Hardwicke does manifestly take for granted, that if the limitation over were good, the first laker would have been restricted to a life estate with remainder to issue as purchasers. He quotes the case of Beauclerk vs Downer, in which the limitation over, if the de-visee “ dies without issue,” was held tobe too remote ; which doctrine he says, has been followed ever since, and the wotds held to import failure of issue at any time. There was nothing, therefore, to prevent the first taker’s having an absolute estate. I think it will not be difficult to determine, whether the case of Garth vs. Baldwin does not rather support the decision in Read vs. Snell, than overrule it.
The existence of the two cases, certainly strengthens each. If there had been but one, then it might have been thought that there was some error of the reporter, or something ambiguous m tha grounds of the decision. But I do not perceive, what question there can be, with .respect to both cases standing together.
But let us see hotv these cases have been regarded by the elementary writers, who read them for no purpose than that of understanding them. Mr. Fearne may be supposed capable of understanding them, asid weighing their authority. After laying down the rule, as I have quoted from him, that where there is any circumstance to shew such an intention, heirs of the body, or issue, shall take as purchasers, he gives, as instances, the cases in question : “ The like point was decreed in the case of Read vs. Snell, before cited; in which case the decision was grounded on the words, leaving no heirs of her body, which were considered as re. iativs to the time of her death, aad, therefore, restrained the gene- *255 rai import of the first limitation to the life of the first taker.” And again, referring to the case of Lampley vs. Blower — “ A limitation of a term to A. and her issue, it seems, vest the whole in A., if the devise vests there : though the addition of the subsequent words, and if A. die, and leave' no issue, Lord Hardwieke said, related to any child living at A’s. death, and. consequently, the word issue there, was to be considered a word oi purchase.” This is laid down as familiar elementary law, and not a doubt is intimated of the construction or authority of these cases.
Mr. Sanders, the editor o? Atkins, in his note to Hodgeson vs. Bussey, refers to these, among other cases, and lays down the rule, in terms which mLht be applied as" the lule of this case. “ The general rule, wixti respect to terms of years, (and the same rule applies to ctiivr personal estates.) seems to be, that whenever an estate, in a term of years, is limited to a person, which limitation, if applied to freehold -property, would create an estate tail, and re. mainder is uiermn ^iven, after a general failure oi issue, or heirs of the body, the whole vesta in the first taker. But if there he any clause or restriction, whereby it plainly appears, that the words, heirs of ihe body; or issue, wer* intended as words of pmchase, (as in the present case of Hodgeson vs. Bussey,) or if !he dying without issue, is restrained to the death of the tenant for life, whereby, the remainder over may take effect, as an executory devise, in either case, the words, heirs of the body, or issue, will operate as words of purchase.” The same thing may be found in Bridgman’s Digest, Tit. Limitations over, 1. This is not propounded as any thing doubtful, or questionable, but as the settled, familial* law. And so 1 apprehend before the case of Lyon vs. Mitchell, it was universally regarded. Certainly, I have not been able to find any thing in any of the elementary books, in the slightest degree contradictory of it. It may be worth remarking, that the reporter, in his marginal note to both the eases*, giving the principle of the decision, states the issue to take in remainder, the words, leaving no issue, restricting it to issue living at the time of the death. But thg.t which is perhaps quite as conclusive, as the authorities referred to, is the circumstance, that throughout the whole of the English cases, where there is a'limitation to one, and his issue, or the'heirs of his body, or any equivalent words, the questions— whether the issue take as purchasers, or the limitation over, be good ; whether the first taker takes an absolute estate, or the limitation over, be void ; are universally assumed to be identical. When the question is to the goodness of the limitation'over, the in.- *256 enquiry is, whether the first taker takes for life, or ail absoluta es* tute, and the contrary. As in Thubridge vs. Killburn, where the limitation who to a daughter for life, and immediately from and after her death, lor tire heirft of her body, and on failure of such issue over, the question of the heirs of the body, taking as purchasers, and of the goodness of the limitation over, are, throughout, treated at the same. So in Chandless vs. Price, before relented to, the question was of the goodness of the limitation over ; and the chancellor, throughout, enquire», whether there ia any restriction, in point of time, to lie up the first taker to less than an absolute estate. in Butterfield vs. Butterfield, 1 Ves. 133, the gift was to the aon for hie, mid for the iuwiul heirs oí his body, and if he should die without hqira, over. Lord L'strdwicke held the son to take the whole estate, because the limitation over was too remote. “Jt siiouid clearly have Uiougiu him entidad to the absolute interest, and the- devise over, void, as a devise of a personalty after such a limitation, as would bo a clear entail of lands, and too remote a COulh.ge.icy ; because In irs of body import ad infinitum, it nothing to resu-rtto <s sup, r.iddud ; and m these cases, where something is supuradd.d, bom c. uns of law and equity have, with much difficult), come into a construction to restrain to issue, living at the time of tne death.” It is plain, that if this had been superadded, the legatee would have been restricted to a life estate. So in Williamson vs. South, 7 T. R. 555. In Gurry vs. Vernon, 1 N. and Me. 71, it was said by a judge, whom it was the misfortune of his Slate to retain but for a short time on the bench, and whose opinions are always entitled to the highest consideration, «• I think the trequeut reference to the rule, that where the words give, is real estate, an estate tail, the first taker shad have an absolute estate in personal property, 1ms led to a confused understanding of the principle. It- is not a primary rule, hut only auxiliary to the general rule of remoteuess. The real question is, always, whether the limitation over is too remote or not. Whether the words, < heirs, issue, heir's of the body, children,'’ and the like, are' words of limitation, or words of purchase. Whether they express an indefinite succession of persons, included within those terms; or whether they point out certain particular persous, who may exist, and must take within a period not excluded by the rules of law.” But the idea is so familiar, and has been so universally taken for granted, that I certair ly should riot have enforced it at so great length as I have done, if 1 h-.d not learnt, with no little surprise, that the decision of the Appeal Court, in the case, Henry vs. Stuart *257 and Means, 2 Hill, 328, seemed new to some of the profession. I believe it may safely be said, that there is no adjudged case, ex* cept that of Lyon and Mitchell’s, of such limitation to issue, &c., in which the questions of the first taker’s being restricted to less than an absolute estate, and the goodness of the limitation over, were not regarded as identical. Certainly, there is no other case in which he was held to take an absolute estate, when the limitation over was good. It is impossible to read through the third and fourth chapters of Mr. Fearne, on executory devises, without perceiving that this is assumed throughout — particularly pp. 478 — 9, XII. (y.) Thus he resists the notion- that when the words are such as to give an estate tail, by implication only, (that is, when personalty is given indefinitely, and limited over, for want of issue,} that these words “ are always to be understood restrictivcly, and to relate only to his dying, without issue living at his death, and, therefore, to give him the term only during his life.” Certainly, it is taken for granted, that such must be the effect, if such were the terms of limitation over.
So prevalent has been this idea, that where the devise has been to one, his heirs, executors, administrators, and assigns, as in Brigge vs. Bensley, 1 Br. C. C. 187, a vague impression seems to have obtained, that the effect of sustaining a limitation over, for want of issue, would be to cut down the first taker to a life estate. Mr.. Kenyon says, in his argument, “ Prima facie, ‘ to a man and his heirs,’ signifies the whole interest, unless there are words to shew the testator meant issue living at the time of his death.” So when -the gift is indefinite, which, when of personalty, of itself, imports an absolute estate, some such impression seems to have been entertained by' Mr. Fearne, in the passage referred to. This, I have no doubt, was what embarrassed the vice chancellor, in Lyon vs. Mitchell. He saw that there was no incompatibility in giving the whole estate, and limiting it over, by executory devise, on the event of not leaving issue ; without perceiving that it is a very different question, when there is an express gift to issue, and an express intent to benefit issue, in wliat manner the testator intended them to take. But there was no decision to stand in his way, and the matter had been put upon the proper footing, by Lord Eldon, in the case of Barnfield vs. Welton, 2 Bos. and Pul. 324, in which there was a devise to one, her heirs and assigns, with a devise over, in the event of her not leaving issue, at the lime of her death. She was held to take the fee, with an executory devise over.
This, too, I have no doubt, led to the decision in Carr vs. Green. *258 It was said that the word leaving, is a word of purchase, instead of serving, as is more accurately expressed by Judge Cheves in the passage before referred to, to qualify the words, issue, &c., as words of purchase.
And it is obvious that it must have this effect. The limitation over, as I have said, is good, because the words, leaving issue, im« port individuals answering to the description of issue, at the time of the death, and it is impossible to give them any other sense. With what shew of reason could you say, that in the direct devise, the testator intended to use the word in a different sense ? By the construction contended for, you must read the devise to Elizabeth Bell,-’ and the heirs of her body, in indefinite lineal succession; but if she die, not leaving any individuals, answering to the description of issue, at the time of her death, then over. But it is a solecism, in construction, to give a different meaning to the same word, in the same clause, in relation to the same matter, and more especially, in such immediate juxta position. The testator gives to issue ; he limits over for want of issue. In point of fact and reason, what ground is there for such a conjecture 1 When there are other circumstances to shew that issue are to take as purchasers, as in Hodgeson vs. Bussey, where the devise was to issue, their executors, administrators, and assigns, there' a limitation over, in terms, which would, of itself, import an indefinite failure of issue, is good. And this is because the testator is supposed to use the word issue in the same sense in which he had before used it, to denote particu. lar persons. So where the limitation is to children, and the estate is limited over, on the event of dying without issue, generally, here the word issue is taken to denote the sort of issue before described ; i. e. children, as in Doe vs. Leyde, 1 T. R. 593. The cases on this subject are numerous, but it is not thought necessary to refer to them. The rule is familiar and uniform. Suppose the limitation were to one, and his issue, and if he should die leaving no stick issue. Here the testator plainly expresses his intention to use the word in both instances, in the same sense. Will any one say that they should, notwithstanding, be taken in a different sense ? Or that such a limitation over, would not be good ? Or that it would differ, in any respect, from a limitation over, after leaving no issue, generally ? Such limitation over, explains the, word is. sue, as first used, to designate particular persons, as is explained by Lord Hardwicks, in Lampley vs. Blower. It explains, too, that they were to take in remainder, and not as joint tenants, with the parent. This is the express import of tire words, if wo havg *259 given them their right meaning. It ia ' to Elizabeth Bell, and to her children, or other descendant;;, who ihall be living at the time of her death. This is absolutely incompatible with the notion of a joint tenancy, and as perfectly unequivocal, as if it had been to her for life, and at her death, to her issue, who shall be then living. Such limitation over, would be inappropriate and unmeaning, unless it were intended that the persons then answering the deserip- " hon of issue, should take, if such were in existence. If the tés-iator supposed that he could create, and intended to create, an estate tail, then it is natural to infer, that he would have limited over, in remainder, after that estate tail; and not that if the issue should fail within 'a year after the death of the first taker, his bounty to the devisee over, should be disappointed. That he has confined the limitation over, to the death of the first taker, is evidence that he had no such intention, of giving to heirs in indefinite succes.sion.
I have not relied on the cases of Peacock vs. Spooner, 2 Vern. 43, and Dafforne vs. Goodman, 2 Vern. 362 ; because these were eases of marriage settlement, and because their authority has been questioned. But if we assume them to have been wrongly decided, that does not affect the present question. In these cases there was no limitation over. Nor have I referred to the case of Knight vs. Ellis, 2 Br. 66, 570, in which, under a devise to one for life, and at his death, to his issue male, and in default of such issue over, the issue male were held to take as purchasers. This case, also, has been questioned ; but I apprehend, solely, on the ground, that the terms of the limitation over, of themselves, import an indefinita failure of issue. If it had been on the event of not leaving issue, I do not conceive that any question could have been suggested.
It is somewhat singular, that the decision in Henry vs. Stuart and Means, should have been thought a departure from the principle settled in Carr vs. Porter, 1 McCh. 60. in that case, the authority of the cases of Read and Snell, and Lampley vs. Blower, is recognized ; the same construction is put upon them, and they are sustained by the same sort of reasoning, which Í have at. tempted to use. Judge Nott says, « The next case is that of Read vs. Snell, 2 Ath. 642. The testatrix left her whole estate to her daughter, and the heirs of her body ; but if she should die, leaving no heirs of her body, then to go over. Lord Ilardwicke held that the word leaving, meant leaving issue at the time of her death.. It might, therefore, be construed a direct gift to the issue, after th® death of the first legatee. But, ia that case, there is a direct gift *260 over to the heirs of her body. It is not left to implication. Lord Hardwicke does not say that the word ‘ leaving’ may be construed into a gift, but that when the testator has given to the heir, or issue, it may serve to qualify the gift, so that the issue may take by limitation, or purchase, according to the intention of the testator.” So oí the case of Lampley vs. Blower. Indeed, the mere decision, that issue cannot take, as purchasers, by implication, leave us to infer, that they may so take by express limitation. ■ As to the difficulty suggested, in argument, to which the court would be exposed in determining, whether the issue — supposing the term to include all descendants, children, grandchildren, &c. — would take per capita, or per stirpes, I do not anticipate any great difficulty, when the case arises. Certainly, the difficulty would be no greater, than if the limitation in remainder, were express — to one for life, and at his death, to his issue, or descendants, who shall bo then Jiving.
Filed 15th February, 1837.
The whole argument, then, rests exclusively on the authority of Lyon vs. Mitchell. I trust that it will be-found that the court has not departed from established rule, in the vain pursuit of a conjectured intention ; but that it has refused to depart from perfectly well settled rule, only for the purpose of defeating a very plain intention. Whatever deference we may pay to the able judges of England, it can hardly be expected that we should depart from our well considered decisions, tiPfollow all the fluctuations of theirs. And certainly, we do not perceive such argument or authority of the case of Lyon vs. Mitchell, as should induce us to this course.
WILLIAM HARPER.
We concur,
H. W DES A OS SURE,
DAVID JOHNSON,
JOHN B. O’NEAIA,
RICHARD GANTT.
RichakdsoN, J.
It might be enough, to say, that the proper construction of Thos. Bell’s will, has been already decided, by the Law Court of Appeals, in the case of Henry vs. Means, (2 Hill, 328.) But as that decision appears not to have given entire satis, faction to the parties concerned, we have again investigated the. doctrine involved. Lawyers and judges differ, not unfrequently, in questions upon estates in expectancy. “ The doctrine, says Sir Win. Blackstone, (2 Bk. 161,) contains some of the nicest and most abstruse learning in the English law,” And whether the. *261 issue take atx indefeasible estate by purchase, after a previous estate, given by the same will, to their immediate ancestor, or take the .same property by inheritance only, is among the most frequent of that class. Christian, in notes to Blaekstone, (p. 170,) says, “ In innumerable instances, from the ignorance of the persons employed, family settlements, particularly, in wills, have proved abortive,” &c. In the instance before us, the difficulty is to discover the intention in the limitations, that is.' whether the testator offers to extend the limitation beyond"a life in being, and twenty.one years after. In this case, I will piesent the principles of construction, and the process of reasoning, by which my own judgment has been finally convinced ; in the hope that they may have weight with others.
Next to the principle of doing legal justice, and closely united ■with the duty of supporting our own judicial independence, is the cal! upon judges to give satisfaction. We are “ to place the con-etruction, upon the entire will, and not upon disjointed parts.” To regard strictly the maxim, “ That the words used, are to be made subservient to the intention.” That if the words will bear two senses, one agreeable to, and another against law, that sense be preferred which is most agreeable thereto. 2 Black. 379.
Upon these rules, which aro taken from the highest authority, and carry an intrinsic weight of reason, we are to read the will, in the spirit of the testator. He certainly intended to limit the property bequeathed, to his daughter Elizabeth, and her lineal issue :■ but has left it questionable, whether he has so expressed his meaning, as to secure her immediate issue in the practical enjoyment of bis bounty, by the means of an independent estate in themselves, or only as distributees of their mother. By an executory devise, a remainder may b;> limited of a chattel interest. (2 Blk. 171.) And the limitations of real and personal property, arc the same in wills. Our object will therefore be,
1. To discover, from the will itself, the intention of the testator, in the distribution of his property.
2. To inquire if tiie intended distribution constitutes such estate,, .as the.law allows to be raised by last wills.
If so, the intention forms the law of the particular will. But .such individual law, is like the laws of a corporation, to be restricted by the superior laws of the country, if they come in con. flict.
First, then. What do the terms of Thos. Bell’s will import 1 He. says, “ 1 give and bequeath to my daughter Elizabeth Bell, one half of the tract of land, containing, &c. to her and th ■ lawful issue of her body, forever. 1 also give her one fifth part of my' negro slaves, &c. &c. to her and the lawful issue of her body, forever,” &c.
For the present, I omit the subsequent clause of the will, in order to confine the question of intention, in the first instance,.to those words alone. Such a division of the two clauses, will give the de-fence its full force, and present the opposite arguments, more distinctly.
*262 “ The lawful issue of her body, forever,” import, not merely her immediate issue, but the most remote — from generation to generation. It is an estate in tail. (6 Rep. 16. 1 Kent 229. 6 Cruise 280.) When property is so given to a person, and his issue, in endless succession, the gift is termed a perpetuity ; and is forbidden, to be so long restricted to the successive issue of the first do-nee. (2 Blk. 172.) (For a full review of the doctrine, see 4 Vesey 227, the Thellusson case.) But still, the law, while it unfetters the estate from the endless entailment, intended by the testator, regards his intention so far, as is consistent with its own rules of policy. It gives to the first legatee, the whole estate, to be at his disposal; but which may be beneficial to his issue, by the chance of inheriting it. This-sense is agreeable to law, and follows the intention, in part, which was to benefit the issue.
If the testator were allowed to limit his property to successive generations, such a limitation would interfere too much with the unforeseen changes, and convenience of society ; and would fetter men in the necessary use of the prime material of a shriving industry, upon which national prosperity depends, as for its life blood.
Still the law permits us to limit property to a certain extent. A man may will his estate to any number of persons, in being, jointly, severally, or in succession ; and for nine months and twenty-one years after the death of the survivor. As to all his children, and then to their issue surviving them, or surviving the age of twenty, one years. (Long vs. Blackall, 77 R. 98. Thellusson’s case, 4 Ves. 313. 2 B. K 172, 3. 3 Cruise 4, 94.)
Now then, we have to inquire further, — Whether Thos. Bell, has, or has not, by a subsequent clause of his will, so explained the bequest to Elizabeth, and “ the lawful issue of her body,” as to mean, no more than the issue of Elizabeth, surviving her, and thereby limit a remainder to specific issue, after her previous estate for life.
If this be his meaning, it is within the legal limitation. And th® intention then forms the law of his will.
Let us, therefore, see if the words of the subsequent clause, fairly qualify the former, and may be made subservient to such in. tention.
“ And it is my will and desire, that if any of my sons, or daughters, should die without lawful issue of their bodies alive, then their part of their estates, to be equally divided among my then surviving children.”
Let us abridge the two clauses, and connect them, in the follow, ing sentence.
“ I give to Elizabeth one fifth part of my negroes, to her and the lawful issue of tier body forever. _ And if Elizabeth should die, without leaving lawful issue of lier body alive, then her part to be equally divided between my then surviving children.”
When the two clauses are thus brought together, the impression of a perpetuity, made by the terms, “ lawful issue of her body,” is immediately repressed by the words, “ leaving lawful issue alive,” Because the latter words may go to confine the issue indicated by *263 the former, “ to surviving issue.” As if he had said, “ I give to Elizabeth,” &c. “ to her and such issue of her body, as she may leave alive, at her death.” If such be the rational connexion, and this the lair meaning of the two clauses, as they stand in the will, then the intention is plain. 1. The negroes go to Elizabeth, for life. 2. To the surviving issue forever. 3. If no such issue, to the surviving brothers and sisters, '.This would be a lawful lirni-tation. But proof of it must be inherent in the will itself, which, like other instruments of writing, may have its different parts brought together, to aid m the construction of each other ; in order to shew the connected meaning, or entire scheme of the author, in the distribution of his property.
The argument on the part of the defendants, is, that although if the contingency, of leaving no issue alive, had occurred, the part of Elizabeth must have gone over, — Yet, as this negative condition did not occur, it simply passes for nothing. And of course, the absolute estate of Elizabeth remains unaltered. It is, therefore, urged, that we arc not to impair th6 strength and legal import of the words, “to her and the lawful issue of her body forever,” by turning the expression of an independent contingency into the qualification of an express estate given to Elizabeth ; and thus abridge her right, by amere implication in favor of her surviving issue. Such a construction must strike every professional understanding.
It is a strong one for the defendants, and brings us to the next step towards the just interpretation of the testator’s intention.
Does the property bequeathed to Elizabeth, continue, after her death, as a part of her estate ? — by reason of the rule, that a perpetuity cannot be created by will; or do the words oí the latter clause shew that no perpetuity was intended ?
That the testator meant, by that clause — 1. To describe' a con. tingency, upon which the property was to go over. And 2d. To point out, that he restricted the meaning of the general expressions, “ to her, and the lawful issue or her body, forever,” — To such issue only, as might survive her. This simple fact presents a distinction, and a ground for reasoning, which com cts the first impression; and carries absolute conviction to many minds ; but not to all. -And iu a contest between two such constructions of the will, in question ; although we would willingly place the true meaning upon the force of proofs, inherent, in rhe will itself, and “ expound it, 'rather, on its own merits,” — 2 Black, 381, — Yet we are not to reject the lights, from cases already adjudged, upon wills, which contain analogous limitations.
It would, however, be needless labor to review the cases upon the general question of limiting estates by will, from the foundation case of Pells vs. Brown. (Cro. Ja. 590.) They have been often collected. (See Porter vs. Bradley, 3 D. and E. 145. Robinson vs. Robinson.) And no where better compared and digested, than in 1st U. S. Law Journal, 583, reviewing our own case, of Carr vs. Green. (2 Nott and McCord, 75.) A review, by the by, which, by pointing out a judicial deviation, affords *264 wholesome admonition to judges, that the old highway, marked oííé by former decisions, is a safo one.
Cut the principles of construction which I first notice, are fully recognized. And especially, those now immediately applicable, to wit, that wherever property is willed to one, and his issue, generally* the first donee takes a fee conditional in lands, or an estate forever in chattels. Not, though because such words gave an absolute es. tute in chattels ; but by implication of law.
But if the gift be to certain particular issue, named or described, as to the issue that shall survive the first donee, such specific issue may take an independent estate, after the life estate of the first taker. At the same time, it is conceded, that this will not be done by implication merely, when it would destroy an absolute estate, plainly and expressly given to the first taker. The lucid exposition, in Carr vs. Porter, given by Judge Nott, upon ihe principles of construction, is full and convincing upon this last point.
That decision lio's at the foundation of the defence ; and if the defendant’s case can be brought within its true principles, it must prevail. But, in that case, the devise was to the Wilsons, and no more — (nor to their issue) — which'gave them the whole estate, eat-pres sly. Whereas, in the case now before us, the bequest is “ to Elizabeth,” “to her, and the lawful issue of her body.”
What do these words indicate under the foregoing principles? A perpetuity, assuredly. And Elizabeth would take the whole es-tato, i. e. by legal intendment. But the same words express, also, the intention, to give an estate to the issue.
Thus we have, before us, two things equally plain. 1. An estate given to Elizabeth, which is like Wilson’s will. But 2. The intention is expressed, that the same shall pass to her issue, forever 5 (not in Wilson’s will,) and which is illegal, only, if intended foe issue, generally.
“ It is very common.” (says Christian, notes to 2 Bk. 174,) “ to bequeath chattel interests to A. and his issue; and if he die, without issue, to B. &c. Where the words are such, as would have given A. an estate tail, in real property ; in personal property the limitations are void,” &e. But if it appears from any clause, or circumstance, in the will, that the testator intended to give it over* only in case A. had no issue living at the time of his death ; upon that event, the subsequent limitation wilt be good, as an executory devise. (See Fearne, 371 — 3 P. W. 262.)
Now, then, when after other bequests of the like kind to other children, the testator adds : “And it is my will and desire, that if any of my sous and daughters should die, without leaving lawful issue of their bodies alive, then their part,” &c. “ to be divided among my then surviving children.”
Does he not reasonably indicate, that the two clauses were connected in his mind ; and that the issue meant, by the lortner words, (« ber lawful issue forever,”) are the children of Elizabeth, alive at her death 1 This appears to me the proper conclusion from the letter of the will. If the testator had meant to limit the estate to each child’s issue, respectively, and in succession, he would nats- *265 rally, have kept up the idea, and ended the second clause, among; my then surviving children and their lawful issue forever. If perpetuity had been iu his head, would -be have abandoned his scheme of eutailrnout, upon his estate falling into the hands of one or more of tho.se very children 1 I think not, from the apparent object of the testator. W hen, therefore, you place the construe, tiou in the language of Sir V/ifliarn Blackstone, “ upon the entire will, and not upon disjointed parts,” no perpetuity appears. But the remainder takes effect, simply because, In the former clause, it is expressed as the wish of the testator, that the issue shall get it. And in the latter, his wish is brought within the rule of legal limitations, by confining the estate to such issue as may be alive at-Elizabeth’s death.
But let us fairly weigh the defendant’s answer to this construe-, tion of the two clauses. It is, that you give the remainder to the surviving issue, iu diminution of the absolute estate, first given to Elizabeth. That this is done by implication, and is the mistaken use of tile doctrine of implication ; which, in Carr vs. Green, was so ju tiy corrected in Carr vs. Porter.
But what is the rejoinder to this answer 1 By the express terms-of "Bell’s will, Elizabeth gets no more than a life estate in the ne-groes ; and they are, as expressly, given to the issue after hen death. If she can get more than a life estate, it is only by legal implication, iu order lo substitute an absolute estate ill the mother, which her issue may inherit. And this is done for the purpose of following the general intention, in favor of the issue, as near as the law permits, — In eases of which the perpetual limitation cannot be carried out. legally.
To assume, that Elizabeth took an absoluto estate, is to take, for grunted, the very point for discussion. By the expression of th® will, she takes only an estate for life.
She can take an absolute .estate, only, — If it was the evident intention of the testator to give the same property to all her issue, forever. But was such his intention, is the very question and gist of the case. And we are to understand his meaning from his whole will, without excludiug any part wh:Ch may reflect light upon the true construction of the estate given.
The implication is eempln.ned of. But is it not plain, that the implication from the second clause quoted, is, at most, opposed to the implication, that Elizabeth took an absolute estate, instead of the one expressly given by the testator ]
But, again. The implication, in favor of the surviving issue, does no more than uphold them iu the estate, liberally given to the issue ; and does, in no way, derogate from the express estate to Elizabeth for life.
'Phis, as f understand, and especially, from the fine argument of Judge. Nott, in the case of Carr vs Porter, is the proper office of implication ; that is, to carry out the general intention, which may have been unskilfully expressed, in the devising clause. — Provided, you fan do so under the tepms used in the explanatory clause,. And the complaint should father be against the mistahea use op *266 tbe other sido of an implication of law, which would give an absolute estate to Elizabeth, by reason of a supposed perpetuity. Whereas, such implication can apply only, after first deciding that the gift is to the issue, in endless succession.
Can there be any doubt, upon the authority of the manner of connecting the two clauses ?
In Dainty vs. Dainty, (6 Term R. 314,) the will gave an estate for life, to the son, which was afterwards enlarged to an estate tail, by a subsequent clause, to wit, “ If my said son should die, without leaving issue,” then over. The whole court concurred in this mode of connecting the two clauses. In Robinson vs. Robinson, (1 Burr. 51,) the same decision was made.
In Porter vs. Bradley, (3 D. and E. 145,) the court say, the first part of the devise carnes a fee. “ But it is clear, that those word» taay be restrained by subsequent ones, so as to carry only an estate tail.”
Now, giving the utmost force to the construction of an absolute estate in Elizabeth, we go no further in Bell’s will.
In Thelusson’s case, 4 Vesey, 329, it is said, “Every word must have its effect.” In Knight vs. Ellis, 2 Bro. — “ The court will go any length to carry the intention,” &c. “lor the benefit of those to whom the testator intended a benefit.” Meaning, doubt, less, the general intention, which, in Bell’s will, is, obviously, in favor of the issue.
How clear it is, then, as Fonblanque says, “ That an estate may be enlarged or controlled, by implication.” Meaning, unquestiona. bly, (with Sir William Blackstone) “ necessary implication,” or, at least, “ highly probable.” 2 Black. 382.
In Bell’s will, I should rather call it, his plain intention, expressed/ in the latter clause, that no other than the surviving issue should take the remainder, — Assuming that a skilful lawyer had written the will, we would conclude that the second clause had been added, in order to render the seve- al bequests, referred to, explicit and lawful. Are we, then, to disjoint this obvious adjunct from the principal clause 1
On the contrary, is it not the unforced induction from the will itself, that we should give the surviving issue the benefit of the rule, — that we are to adopt the sense agreeable to law, when the right meaning of the will gives them an independent estate 1 I, here, readily grant, that if the negroes given to the issue, in the first clause, could enure to their benefit, as a fee conditional in lands, there would be room for urging, that we might leave the latter clause, to mean no more than the contingency, upon which the property was to go over; because it might then be superfluous for •any other purpose ; as a lawful estate would have been, already, given by the first clause to the issue named.
It is for that reason, I apprehend, that in England, such explanatory clauses have been, sometimes, construed differently, as they relate to real or personal estate. That is, according as their aid is requisite to make the benefit, intended by the testator, to the is. gue, practical or pot. (Sec Forth vs. Chapman, 1 P. Wm. 667. *267 Stafford vs. Bunkley, 2 Ver. 180. Sheffield vs. Orrey, Ves. 288. Crook vs. De Vandes, 9 Tez. 203.)
Without such a distinction, we might, in some cases, explain away a fee conditional, really intended to be given, from a notion, that such a distinction was moré technical than sound. (See the reasons in Ellis vs. Knight, 2 Bro. 578.)
But, at all events, it points out in what cases the subsequent elause may be considered explanatory of the clause which directly devises the property; that is, wherever it supposes the general intention of the testator to give to the issue.
But I now leave off reasoning from the details and forms of the particular will; and will proceed to cite adjudications upon similar wills, so strong and applicable, as to induce the hope, that all parties will agree, that this court could make no other decision, than in support of the former, upon the same will. Means v. Henry.
In the case of Lampley vs. Blower, 3 Atk. 897, the bequest was to nieces and their issue ; but if either should die, and leave no issue, then to the survivor.
It w&s held that a surviving son of one of the nieces, took hie share in his own right, and not by inheritance, if so, must not the surviving children of Elizabeth Bell, take her fifth part in their own'right 1
In Read vs. Snell, 2 Atk. 642, the bequest was to a daughter, .and the heirs of her body. But in case the daughter died, leaving no heirs of her body, then over, &c. This was held a gift for life, to the daughter, with a contingent remainder to the issue surviving her, which is, precisely, what is claimed for the issue, left alive, by Elizabeth Bell.
I have assumed, in one part of the argument, that the will of Thomas Bell may have been drawn, by good counsel. And I here ask, if it had been drawn by the best lawyer in Boaufort, and he now stood before the court, in support of an independent estate to the surviving issue of Elizabeth Bell, and had adduced the two cases I have just noticed, as his authority and justification, for giving such independent estate, in (he terms set forth in Thomas Bell’s will; I ask if his skill could be questioned, or the orthodoxy of his language doubted ?
Let us now take a different case.
In Forth vs. Chapman, (1 P. Wms. 667,) the bequest was to a nephew generally, (not to his issue.) But " liould he die and leave no issue,” then over, &c. Here the devise over was held good, no issue being left. But it must be admitted, that it does no£ follow, that if there had been issue surviving, such issue would have taken the estate ; because, there was no gift whatever, to issue. And to imply a remainder to the issue, would be to derogate from the estate, given to the nephew, in absolute terms ; which would be an implication, without any plain intention in favor of the issue, on the part of the testator ; ana without any necessity, arising out of the character of personal estates.
For an instance, m which such an implication in favor of surviving issue might arise, take our own well considered case of Brummet vs. Barber, (2 Hill 543.) The gift was to the use of Comfor *268 Perry, “ and the heirs of her body.” “ But, should she die without children to heir the .said negroes,” then over, &c. The limi-itation over was held good, on failure of “ children to heir,” &e. And assuredly, had any children survived C. Perry, thoy might have taken the negroes, because the direct gift was to the “ heirs of her body,” in plain terms. it is the conclusion drawn in favor of the first taker, (the nephew,) in such cases as Forth vs. Chapman, and not attending to the distinction, when tho gift is also to the is-suo. That contributes to the error of supposing, that Elizabeth Bell took an absolute estate in the negroes now in question. And also by confounding the construction, placed upon similar limita, tions, in some of the English cases, in order to create an estate tail in lands. But how explicitly, is the distinction between such a. case as Forth vs. Chapman, and the one now before us, pointed out in the case of Knight vs. Ellis, (2 Brown 578.) While at the same time, the reason for construing tho samo words differently, when they refer to lands, is presented, as consistent with the character of real estates.
The court say, A man by bis will, devises to A. for life,” &e. If that were all, the disposition would end I here, as to A. And any other disposition would be effectual, after bis (A.’s) death. The testator then gives the same fund over to B. after failure of the issue of A.
What is the court to do ? It is clear, that a life interest only, is given to A. it is clear, that no interest is given to B. while there is any issue of A. The consequence is, that as no interest springs to B , and no express estate is given, after the death of A., tho intermediate interest would be undisposed of; unless A. were considered, as taking for tho benefit of his issue, us well as for himself. Andas the words are capable of such amplification, tho court naturally implies an intention in the testator, that A. should so lake ; that the property should be transmissible, through him to his issue. And he was, therefore, considered as taking an estate tail, which would descend on his issue. Now, an estate in chattels, is not transmissible to the issue, in the same manner as real estate, nor capable of any kind of descent; and therefore, an estate in chat, tels, so given, from the necessity of the thing, gives the whole into-rest to the first taker. But. if the testator, without leaving it to the necessary implication, gives the fund, expressly to the issue, rhey are not driven to the former rule. But the issue may take as purchasers ; and there is an end of the enlargement of any kind, of the estn'p of the tenant for life. For another estate is given after Ms d> aih, to other persons, (the issue,) who are to take by purchase. It no long r ¡esta on conjecture.
'i nis .easoning appears to me, conclusive. Whether we ought to adopt the English judicial construction, in reference to real estate, is not now to be decided. But the distinction, between such wills,'as make an express gift of chattels to the issue, and those, which do no more than give the same property over, upon the contingency of no issue surviving the first taker, is plain and convincing.
Without meaning to imply, that a different construction might be put upon Bell’s will, in reference, to the landed estate, let me re- *269 mark, that the distinction under the English autlfontics, in reference to real and personal property, does, in no way, derogate from the rule, that in executory devises, the limitations are the same in real and personal estate.
The distinction is, between the implication of the same words, when used in reference to real and personal property ; because they differ in their transmissible quahtv, and the object of the distinction, is, to prevent an immediate reversion to the testator’s estate, when he himself, clearly contemplatcdj.'tipno. (Fearne <187, note.) In such cases, the rule of construrrigHv'ills, so as to iollow the intent, as nearly as Jaw permits, (technically called, construction “ by pres.,”) takes place, 4 Cruise 161.-'
Let us now take our own case of Carr vs. Porter. 2 McCord 60. It turned upon the construction of Wm. Wilson’s will. “ The rest and residue of my estate, both real and personal, to be equally divided between my two grandsons, Wilson and Thomas,” &c. &c. “But should they die, leaving no lawful issue, in that case, 1 give and bequeath ’ the whole of my estate, both real and personal, to Richard Godfrey” spid others.'
The Court of Appeals, decided that Wilson and Thomas, took an estate, which they might aliene foíever: subject to be defeated only, upon both dying without issue surviving. This decision corrected that of Carr vs. Green, which had given the estate to the issue surviving Wilson and Thomas.
But for illustrating the present case, lot its suppose, that the will of Wm. Wilson had run thus :
“ The rest and residue, &c, to Wilson and Thomas, to them and their lawful issue forever. But should they leave no lawful issue, I give and bequeath the whole to Richard Godfrey and others.”
If Wm. Wilson’s will, had so given the rest and residue to the issue, as well as to Wilson and Thomas,T. ask. if Judge Waties’ argument, in favor of the issue taking by pinchase, (See Carr vs. Green, 2 McCord 75,) could have been answered ?
On the other hand ; interpolate those words, (“ their lawful issue forever,”) into the extract from W. Wilson’s will, made by Judge Nott: and instead of that regular series of skilful arguments, with which his opinion abounds, it would be inconclusive, if noCpowerless, to shew, that Wilson and Thomas took more than a life estate.
The whole strength of this admirable • refutation of the former decision, in Carr vs. Green, turns upon the want of those words, in W. Wilson’s will. And had they been found there, the fine, inge. nu .us argument of Chancellor Waties. would have withstood any test upon 'the point of construction. At least, as far as relates to personal estate, either under English, or American decisions.
I have taken, perhaps, needless time, in pointing out the precise point of difference, between the antagonist opinions, given by two great judges, on Wm. Wilson’s will. Because I do suspect, -that some apprehension has been felt, that the late adjudication in Henry vs. Means, may shake the principles-of -the decision in'the case-of Carr vs. Porter But this is certainly,-a groundless fear. On the contrary, Bell’s will presents the precisé caso, m wjiich, from fir,® reasoning of both Judge Nott, and Judge Waties, the tw© *270 courts would Iwve been unanimous in giving at least, the personal property, to the surviving issue, as purchasers ; which is all that is now in dispute. Bear in miud, that the terms, “ To A. and the issue of his body, forever,” give to A. an absolute estate, ouly by implication of law. The bare expression gives A. no more than a life estate in chattels ; as it does a fee conditional in lands, which literally, means a life estate to A., and after his death to his issue in succession. Bear in mind, this plain distinction, between the estate literally given, and the absolute estate implied by law, when such implication becomes necessary, in order to avoid a perpetuity ; and the apprehension, that the authority of the decision in Carr vs. Porter, is impaired by that of Means vs. Henry, vanishes. On the contrary, we would support the true meaning of that leading case; and the confidence in our present decision, is, not a little, derived from the intellectual lights of that approved adjudication.
The trite maxim, oí “ stare decisis,” may have been sometimes treated with little respect, and in some few instances neglected. But there can be few greater errors, than such license. . Every lawyer, of necessity gives advice, bottomed upon the decisions of the courts ; and in purchases, sales, and conduct, men assume such decisions, as pointing out the law, that is to govern. From which, it clearly follows, that adjudged cases make practical law. And if the courts, themselves, do not adhere to such decisions, we cannot be safe in the rights of property, or person.
Forms and pleas, rules and orders of courts, and the judicature itself, may be changed with trifling inconvenience, and but to a few. But for the purposes of men in general — for the rich and the poor — the widow and the infant, we may, more wisely and more morally, try experiments upon the constitution of tbo State, than innovate upon the established principles, or the known rules of construction, that apply to overy day conduct, and every day bu. siness. la these respects, and they occur every hour, the ancient observation of — '(Misara servitus, ubi, jus est vagum, aui in~ cognitwm,'” is true to the letter.
For what purpose do wise counsellors treasure up judicial adjudications, from their first annals in the “Year Books,” up to th® present moment; but for the object of renewing, and making sure-of the beaten track, where they find the best means of their own justification, as well as sate footing for their clients. Lawyers are never more truly in their avocation, nor doing better their duty to the country, than when they closely, but iairly, supervise the decisions of judges. This professional attribute is so important to the regular administrador) of justice, that it cannot but presume the standing and usefulness of a vigilaut body of counsellors, always ready to sound the alarm, when just, or to defend the bench, when unjustly suspected of error,or of the temper, that would render the rules of law unsteady. But in the particular instance, of the construction of Bell’s will, to be found in the case of Henry against Means, I must add, (and I was not of the bench, that decided the case,) that I find only confirmation, in the principles of law, that governed the decision in Carr againsL Porter.
J. S. RICHARDSON.